# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (CINCINNATI)

| | |
|---|---|
| **ADAM KLOTZ** individually, and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**TOTAL QUALITY LOGISTICS,** an Ohio limited liability company,<br><br>*Defendant.* | Case No. 1:19-cv-687<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Adam Klotz ("Klotz" or "Plaintiff Klotz") brings this Class Action Complaint and Demand for Jury Trial against Defendant Total Quality Logistics ("TQL" or "Defendant") to stop TQL from violating the Telephone Consumer Protection Act ("TCPA") by placing autodialed phone calls to consumers' cellular phone numbers without consent and by otherwise engaging in telemarketing without maintaining adequate policies and procedures for maintaining an internal do not call list, and to otherwise obtain injunctive and monetary relief for all persons injured by TQL's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### INTRODUCTION

1. TQL is a freight brokerage company that connects businesses with freight carriers.[1]

---

[1] https://www.linkedin.com/company/total-quality-logistics/about/

2. TQL promotes cold calling to its salespeople: "If you have an unbelievable work ethic (we're talking the top 10% of anyone you know), the drive for financial freedom, and **skin thick enough for *making cold calls***, then this might be the sales career for you."[2] (emphasis added)

3. Cold calling is a core component for TQL's business, and TQL puts tremendous pressure on its salespeople to place cold calls to drum up business.

4. TQL salespeople place calls to consumers without having the necessary prior consent necessary to make such calls, and without TQL maintaining adequate policies and procedures for maintaining an internal do not call list.

5. In Plaintiff Klotz's case, TQL placed at least 7 autodialed and/or otherwise unsolicited calls to Plaintiff Klotz's residential cellular phone number without his consent, despite his repeated requests to be placed on their do not call list.

6. In response to these calls, Plaintiff Klotz seeks an injunction preventing Defendant from violating the TCPA by placing autodialed calls to consumers' cellular telephone numbers and otherwise engaging in telemarketing without maintaining adequate policies and procedures for maintaining an internal do not call list, as well as an award of statutory damages to the members of the Classes and costs.

## PARTIES

7. Plaintiff Klotz is an Iowa City, Iowa resident.

8. Defendant TQL is an Ohio company headquartered in Cincinnati, Ohio.

---

[2] https://www.glassdoor.com/job-listing/sales-representative-entry-level-total-quality-logistics-JV_IC1140171_KO0,32_KE33,56.htm?jl=2756917722&ctt=1558012673448

2

## JURISDICTION AND VENUE

9. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227.

10. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant maintains its headquarters in this District and because the wrongful conduct giving rise to this case was directed from this District.

## COMMON ALLEGATIONS

### TQL's Sales Involves Cold Calling

11. TQL employs cold calling as a core component for generating sales for its business. It is such a core component, cold calling is referenced in job postings for sales staff and in promotional videos created by TQL.

12. In a video posted by TQL, "Becoming a TQL Sales Rep | 60 Seconds," a sales rep named Joe references cold calling and the requirement for salespeople to place 100 calls per day: "It's up to you to start building those relationships. *Start cold calling. You know, a hundred calls a day*."[3] (emphasis added)

13. Later in the same video, a recruiter named Alishia says, "So, if you have an awesome work ethic, a desire to make unlimited amounts of money, and a skin thick enough to make *cold calls*, then you get on in here!"[4] (emphasis added)

14. Job review sites for TQL are filled with complaints from former employees about the cold calling that salespeople are required to do:

- "Expected to make 100 cold calls or more a day"[5]

---

[3] https://www.youtube.com/watch?v=tvygCPQZq_Y
[4] *Id.*
[5] https://www.glassdoor.com/Reviews/Total-Quality-Logistics-cold-calls-Reviews-EI_IE134523.0,23_KH24,34.htm

3

- "long hours, constant cold calls, lots of rejection, high turn over rate"[6]

- "Lots of cold calls (this job is not for those not willing to put in the time to succeed)"[7]

- "Making 100 calls a day of cold calls. Customers hanging up on us because we call so much."[8]

- "That is when you need to grow an extra layer of skin because you have then become the most annoying thing in the modern world. Cold call TELEMARKETER. I grew up in the oil fields and have never been cussed at so much in my life."[9]

15. As a result of the pressure salespeople are put under, companies and consumers are receiving multiple unwanted, autodialed calls, even after requesting the calls to stop:

- "Apparently if you google my phone number that I got about 5 years [ago], I am the owner of a trucking co. TQL has been calling me approx.. 2-3 times a week for the past 5 years. Even though I tell them they have the wrong number, they still call. This has gotten to the point where it is causing me major distress with them constantly calling and calling and calling and calling and calling….GIVE [***] YEARS…and cant get my number out of their computer system for some reason. I am ready to file a major law suit on this company for telephone harassment."[10]

- "These people don't give up. I have requested to be 'put on their Do Not Call List' 3 times."[11]

- "HORRIBLE! What do these idiots think they are doing?? I have had them blocked for years, reported them to the FCC, and nothing happens."[12]

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] https://www.indeed.com/cmp/Total-Quality-Logistics-(tql)/reviews
[10] https://800notes.com/Phone.aspx/1-513-831-2600/10
[11] *Id.*
[12] https://800notes.com/Phone.aspx/1-513-831-2600/17

4

- "They have escalated their annoyance level to letting the call go to voicemail and not leaving a message just leaving dead air. They have done this 8 times today, in an attempt to fill up my voicemail storage?"[13]

- "TQL….they just keep calling and calling and calling. Have asked many, many times that they remove our number. It is always someone NEW that calls. They must go through help like crazy."[14]

- "This is one of the companys spamming people.If you block them they put you on a internal spam dialer."[15]

- "Horrible jerks, they have been pestering me, even though I have them blocked, am on the Do Not call list…"[16]

16. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

17. Yet in violation of this rule, Defendant fails to obtain any express written consent prior to placing autodialed calls to cellular telephone numbers.

## PLAINTIFF KLOTZ'S ALLEGATIONS

**TQL Repeatedly Called Plaintiff Klotz's Cell Phone Number Without Consent Using an Autodialer, Notwithstanding Plaintiff's Repeated Requests That TQL Stop Calling Him**

18. Plaintiff Klotz registered his cell phone number on the DNC on April 23, 2019 in order to avoid receiving unwanted solicitation calls.

19. Plaintiff's cellular phone number is his personal number and not associated with a business.

20. Beginning in approximately December, 2018, Plaintiff began receiving calls from

---

[13] https://800notes.com/Phone.aspx/1-513-831-2600/16
[14] *Id.*
[15] *Id.*
[16] *Id.*

TQL's number 513-831-2600 to his cellular phone number.

21. The purpose of the calls was to solicit Plaintiff to use TQL as a broker for Plaintiff's shipping needs.

22. Plaintiff made it clear to the salespeople that he spoke to that he was not interested, and did not need TQL's services for shipping, and asked specifically to be placed on a do not call list.

23. Despite his multiple requests for the calls to stop, TQL salespeople continued to call Plaintiff's cellular phone at a rate of approximately once per week.

24. For all answered calls, the salespeople identified their company as Total Quality Logistics.

25. On February 6, 2019 at 12:04 PM, Klotz received another call from a TQL agent on his cellular phone using the phone number 513-831-2600. Klotz complained to this agent about the calls he was receiving and asked for the calls to stop. The agent assured Klotz that the calls would be stopped.

26. Klotz received another call from 513-831-2600 on February 19, 2019 at 2:26 PM. As with the previous call, Klotz asked the agent to put his number on TQL's internal do not call list, explaining that the calls were not relevant to him.

27. At this point, Klotz realized that the calls were not stopping, so he blocked 513-831-2600 on his cellular phone.

28. Unfortunately for Klotz, the calls continued. Klotz received notifications on his phone about missed calls from TQL and also received blank voicemails that were left from TQL salespeople using phone number 513-831-2600.

29. Frustrated at the constant interruptions and notifications, Klotz unblocked 513-831-2600 at the end of March, 2019 so he could again tell the salespeople to stop calling hoping

the calls would finally stop.

30. On March 28, 2019 at 1:25 PM, Klotz received a call from a TQL agent using phone number 513-831-2600. Klotz told the agent that he was not interested and asked to be placed on a do not call list. Klotz was assured by the agent that his number would be added to TQL's internal do not call list.

31. On April 22, 2019 at 11:03 AM, Klotz received yet another call from Defendant using phone number 513-831-2600 on his cellular phone. Klotz answered the call and again complained to the agent about the calls he was receiving and asked for the calls to stop. As with the previous salespeople Klotz spoke to, this agent also assured Klotz that the calls would be stopped.

32. Additional calls were received on May 2, 2019 at 10:30 AM, May 8, 2019 at 2:40 PM and May 9, 2019 at 9:24 AM from Defendant using 513-831-2600.

33. When calling 513-831-2600, an automated system identifies the company as Total Quality Logistics and as of May 15, 2019 directed consumers to visit the website TQL.com.

34. Upon information and belief, TQL salespeople used an autodialer when calling Plaintiff Klotz, based on the frequency of the calls, which was approximately once per week, the repetition of calls despite his requests for the calls to stop, and based on the fact that all of the calls came in from salespeople using the same phone number 513-831-2600.

35. Plaintiff Klotz does not have a relationship with TQL, and has never consented to any contact from Defendant.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims

36. Plaintiff Klotz brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated and seek

7

certification of the following Classes:

> **Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called, (2) on the person's cellular telephone number, (3) using substantially the same equipment used to call Plaintiff, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call Plaintiff, or (b) Defendant did not obtain prior express written consent.
>
> **Internal Do Not Call Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or agents acting on behalf of Defendant) called more than one time within any 12-month period, (2) on the person's residential telephone number, (3) for substantially the same reason Defendant called Plaintiff.

37. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

38. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

39. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   (a) whether Defendant placed autodialed phone calls to Plaintiff and the members

8

    of the Autodialed No Consent Class without first obtaining prior express written consent to place the calls;

   (b) whether Defendant implemented and/or enforced adequate internal do not call policies and procedures prior to engaging in telemarketing to members of the Internal Do Not Call Class;

   (c) whether Defendant's conduct constitutes a violation of the TCPA; and

   (d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

  40. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Classes.

  41. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision

by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed No Consent Class)**

42. Plaintiff repeats and realleges paragraphs 1 through 41 of this Complaint and incorporates them by reference herein.

43. Defendant and/or its agents made unwanted solicitation telephone calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using an autodialer.

44. These solicitation telephone calls were made *en masse* without the consent of Plaintiff and the other members of the Autodialed No Consent Class to receive such solicitation telephone calls.

45. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

46. In the event that the Court determines that Defendant's conduct was wilful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

47. Plaintiff repeats and realleges paragraphs 1 through 41 of this Complaint and incorporates them by reference.

48. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has

instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for

11

telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

49. Defendant or its agent made marketing calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

50. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

51. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying the Class as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages to be paid into a common fund for the benefit of Plaintiff and the Classes;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of their unlawful telephone calling practices;

e) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

f) Such further and other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

Dated: August 20, 2019

/s/ Bryce A. Lenox
Bryce A. Lenox (0069936)
The Law Office of Bryce A. Lenox, Esq. LLC
3825 Edwards Road, Suite 103
Cincinnati, Ohio 45209
bryce@brycelenoxlaw.com
Telephone: (513) 426-6546

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Stefan Coleman*
Law@stefancoleman.com
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427

*Attorneys for Plaintiff and the putative Classes*

*Pro Hac Vice motion forthcoming*

13